# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:23-cr-59 |
| vs. | : | Judge Timothy S. Black |
| EDUARDO BELLORIN (3), | : | |
| Defendant. | : | |

## ORDER DENYING DEFENDANT'S MOTION
## FOR RECONSIDERATION OF BOND

This criminal case is before the Court on Defendant's motion for reconsideration of bond (Doc. 32) and the Government's response in opposition (Doc. 34). Also before the Court is Defendant's Pretrial Report. (Doc. 24).

## I. BACKGROUND

On May 24, 2023, Defendant Eduardo Villarroel Bellorin and two co-defendants were charged by way of Indictment with various drug and money laundering offenses. (Doc. 5). Specifically, Defendant Bellorin was charged with the following: drug trafficking conspiracy, in violation of 21 U.S.C. § 846 (Count 1); sale of counterfeit drugs, in violation of 21 U.S.C. §§ 331(i)(3), 333(b)(8) (Counts 3, 4, 5, 6); and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count 7). (Doc. 5).

As charged, Count 1 carries a mandatory minimum term of 10 years imprisonment up to LIFE. 21 U.S.C. § 841(b)(1)(A). Additionally, Count 1 gives rise to a rebuttable presumption that no bond condition or combination of conditions will reasonably assure Defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e)(3)(A).

Defendant also faces up to 10 years imprisonment on Counts 3 through 6, and up to 20 years imprisonment on Count 7. 21 U.S.C. § 333(b)(8); 18 U.S.C. § 1956(a)(1), (h).

On June 14, 2023, Defendant was arrested at his North Carolina residence and brought before U.S. Magistrate Judge Susan C. Rodriguez in the Western District of North Carolina. (Docs. 13, 23-3, 34 at 5).[1] Following a detention hearing on June 21, 2023, Magistrate Judge Rodriguez concluded that Defendant failed to rebut the presumption of detention, whereas the Government sufficiently evidenced that Defendant posed a risk of flight and danger to the community. (Docs. 23-1, 23-3 at 2). Accordingly, Defendant was ordered detained pending trial. (Doc. 23-1).

Defendant now seeks reconsideration of the Magistrate Judge's Detention Order, pursuant to 18 U.S.C. § 3145(b). (Doc. 28).[2]

## II. STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3142(e)(1), "[i]f, after a [detention] hearing …, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial."

---

[1] *United States v. Eduardo Luis Villarroel Bellorin*, No. 3:23-mj-183 (W.D. N.C., Jun. 15, 2023).

[2] Defendant further requests that the Court set a hearing on his motion for reconsideration of bond. (Doc. 32). However, the Court finds the parties' written submissions, as well as Defendant's proffered arguments and exhibits, are sufficient for purposes of the requisite analysis. Thus, a hearing is not required.

A defendant may file a motion with the district court for revocation or amendment of a magistrate judge's detention order. 18 U.S.C. § 3145(b). The majority of circuits, as well as most district courts within the Sixth Circuit, hold that the district court reviews a magistrate judge's detention order *de novo*. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1127-29 (S.D. Ohio 2000) (collecting cases).

Typically, "[t]he default position of the law … is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). However, if there is probable cause to believe that a defendant has committed an offense in one of several enumerated categories, or if a defendant is indicted for such an offense, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3); *Stone*, 608 F.3d at 945. "The presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.*

A presumption in favor of detention imposes a "burden of production" on the defendant. *Id.* And although the defendant's burden is not heavy, it can only be satisfied "when he 'com[es] forward with evidence that he does not pose a danger to the community or a risk of flight.'" *Id.* (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). "Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.'" *Id.*

However, the Government at all times maintains the burden of persuasion and therefore must show by clear and convincing evidence that the defendant is a danger to another person or the community, or by a preponderance of the evidence that the defendant is a flight risk. *Id.*; *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *2 (6th Cir. Mar. 18, 2020); 18 U.S.C. § 3142(f)(2)(B).

In determining whether any conditions will reasonably assure a defendant's appearance and the safety of the community, the Court must consider the factors set forth in 18 U.S.C. § 3142(g), including: (1) the nature and circumstances of the alleged offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community if the defendant is released.

### III. ANALYSIS

Defendant argues that bond is appropriate for several reasons, including: (1) he is a naturalized United States citizen; (2) he has surrendered his U.S. passport and is willing to surrender his Venezuelan passport as well; (3) he has significant family ties in the United States, including his wife and three young children (who reside in their family home in North Carolina), as well as a brother and sister (who reside in South and North Carolina, respectively); (4) he has a long history of gainful employment with a domestic airline company; and (5) he lacks any prior criminal history. (Doc. 32 at 3-4).[3] Defendant further notes that while this information was included in his Pretrial Report,

---

[3] The Court will accept each of Defendant's assertions as true, without the need for further evidentiary support.

4

the U.S. Pretrial Office was unable to verify the information prior to the detention hearing. Accordingly, Defendant argues that the Magistrate Judge did not appear to take these favorable factors into account during the detention hearing. (*Id.*)

The Government opposes pretrial release, stating that none of Defendant's arguments address the concerns that led the Magistrate Judge to issue an Order of detention. (Doc. 34). The Government further argues that Defendant has failed to rebut the presumption in favor of detention, and that Defendant poses a risk of flight and danger to the community, based the nature of the offense and Defendant's history and characteristics. (*Id.*)

In ordering Defendant detained, the Magistrate Judge addressed the appropriate statutory factors, and this Court now considers those same statutory factors *de novo*.

### A. Nature and Circumstances of the Alleged Offense

The nature and circumstances of the alleged offense in this case are very serious. Indeed, Count 1 of the Indictment alone gives rise to a presumption in favor of detention and, further, exposes Defendant to a potential life sentence, with a mandatory minimum term of at least 10 years imprisonment.

Defendant is charged with engaging in an extensive, transnational drug trafficking operation that took place over the dark web and utilized encrypted communications and cryptocurrency to thwart detection. Specifically, the Government alleges that the drug trafficking organization would use encrypted messaging and dark web marketplaces "to sell 'pressed Adderall' (actually methamphetamine) and 'pressed Oxycondone' (actually fentanyl) in exchange for cryptocurrency (largely Bitcoin)." (Doc. 34 at 2).

5

Notably, Defendant's alleged role in the offense was significant. The Government alleges that a co-defendant in Columbia would arrange for the sale and shipment of the drugs, and that Defendant would then receive these bulk shipments of pills, which pills Defendant would later repackage and mail to customers.[4] Moreover, the Government alleges that some of initial drug shipments were sent to Defendant's home (*i.e.*, the home where his wife and young children reside). The Government further alleges that, at least on one occasion, Defendant recruited his wife to track down one of the drug shipments when it did not arrive as anticipated.

Defendant is also alleged to have played a crucial role in laundering funds by accepting cryptocurrency payments, which payments he filtered through various online accounts before dispersing the money to his and his co-defendants' bank accounts. The Government alleges that Defendant is responsible for laundering over $1.6 million, and that the drug trafficking organization as a whole laundered over $2 million worth of cryptocurrency. Based on these figures, the Government estimates that the conspiracy is responsible for trafficking roughly 53 kilograms of mixtures/substances containing methamphetamine (though some contained fentanyl as well).

Finally, the Government alleges that a post-arrest search of Defendant's home revealed "a bin or container of loose pills that appeared to be 'reject' pills that they did not want to send to clients because they were broken or off-color." (Doc. 34 at 5). The Government further states that, during a post-arrest interview, Defendant admitted to

---

[4] Defendant allegedly operated out of the Charlotte, North Carolina area, whereas another co-defendant worked both the Charlotte area as well as South Florida. (Doc. 34 at 3).

6

sending the pills, although Defendant also said that he believed the pills were just medicine. (*Id.*)

In short, Defendant is alleged to have been extensively involved in a drug trafficking operation that was responsible for pouring a staggering quantity of fentanyl and methamphetamine into the community, as well as using sophisticated means to further the operation, launder the drug proceeds, and avoid detection. Thus, the nature and circumstances of the offense are unquestionably serious and overwhelmingly weigh in favor of pretrial detention.

### B. Weight of the Evidence against Defendant

Second, the Court must consider the weight of the evidence. "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)).

Here, the nature and circumstances of Defendant's alleged conduct are overwhelmingly dangerous. Moreover, the sophisticated and secretive methods allegedly employed to accomplish the drug trafficking raise the likelihood that Defendant could pose a continuing danger if released on bond. And the Government asserts that it has evidentiary support for Defendant's conduct and methods, by way of, *inter alia*, controlled purchases, surveillance, and evidence collected during the search of Defendant's home.

The Court acknowledges that there is no evidence of Defendant's dangerousness *beyond* the risk of re-engaging in similar conduct. But, frankly, the risk that is evidenced

is sufficiently concerning. The Court will elaborate on these concerns further in discussing the remaining factors, *infra*.

### C. History and Characteristics of Defendant

Third, the Court must consider Defendant's "history and characteristics," including, *inter alia*, "physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings…." 18 U.S.C. § 3142(g)(3)(A).

Here, Defendant reports no history of physical or mental health concerns and no substance abuse issues. (Doc. 24 at 4). Additionally, Defendant has no prior criminal history. (*Id*.) Defendant also has a long history of verifiable employment, having spent the last decade working as a Crew Chief for American Airlines. (*Id*. at 3). And Defendant is a naturalized U.S. citizen, who has and/or is willing to surrender his U.S. and Venezuelan passports. Finally, Defendant has significant family ties in the United States (in and around North Carolina), including his mother, brother, sister, and, most notably, his wife and three young children. (*Id*. at 2-3).[5] All of these factors generally

---

[5] The Court acknowledges that Defendant has no community or family ties to the Southern District of Ohio, but finds this distinction to carry less weight. Travelling from Charlotte, North Carolina to Cincinnati, Ohio can easily be accomplished with a short flight or modest drive. And while supervising a defendant out of state certainly presents its own complications, it can be (and is often) done. Ultimately, as long as a defendant is likely to remain in the United States, can travel to the Southern District of Ohio with little inconvenience, and can be appropriately supervised by the U.S. Pretrial Office, the Court is less concerned with his district of residence.

weigh in Defendant's favor. That said, the Court finds that the nature and circumstances of the alleged offense serve to undermine some of these favorable factors.

Specifically, the Court would typically find Defendant's wife and young children to serve as great incentive for Defendant to remain compliant on bond and not to flee from prosecution. However, the Court cannot ignore the allegations that Defendant was receiving and repackaging shipments of fentanyl and methamphetamine out of his family home and, indeed, even involving his wife in tracking down missing drug packages. Thus, the Court finds no comfort in releasing Defendant to reside in his primary residence or, frankly, the residence of any family member.

Moreover, the manner in which the drug sales were allegedly being conducted— *i.e.*, via the dark web, using encrypted messaging, paid for with bitcoin, and mailed discreetly—would evidence a knowledge and sophistication with covert criminal activity. And there are simply no conditions of supervision that could <u>adequately</u> monitor and thwart such conduct.

The Court further notes that the lengthy prison sentence Defendant may face upon conviction increases his risk of flight. Moreover, Defendant's lengthy employment history with the airlines undoubtedly gives him some increased knowledge of the internal workings of the air travel industry. And Defendant also has a history of international travel and ties to Venezuela (from which he could not be extradited).

In short, Defendant still has incentive to flee, coupled with possible access to relatively untraceable funds, as well as discreet avenues of continued criminal activity

9

and flight from prosecution, for which the Court would have no recourse. Thus, the Court cannot find that Defendant's history and characteristics weigh in his favor.

### D. Risk of Danger to the Community

Fourth, the Court must consider the "nature and seriousness of the danger to any person or the community" posed by Defendant's release. 18 U.S.C. § 3142(g)(4).

Here, the Court finds that the risk of danger to the community could be significant. As previously noted, Defendant is alleged to have received and repackaged fentanyl and methamphetamine in his family home—where his three young children reside. Indeed, the Government states that law enforcement found discarded pills during a search of Defendant's residence. Moreover, the pills that were allegedly sold within the community were mislabeled as other drugs. Based on the alleged conduct, the Court cannot conclude that Defendant's release would not pose a risk to the safety of his family and the community.

## IV. CONCLUSION

Having considered all relevant statutory factors, the information contained in the Pretrial Report, the recommendation of the Pretrial Officer, and the arguments of the parties, this Court concurs with the Magistrate Judge's conclusion and finds, independently, that Defendant has failed to overcome the presumption in favor of detention.

Moreover, the Court finds, by clear and convincing evidence, that Defendant's release would pose a danger to others; and the Court finds, by a preponderance of the evidence, that Defendant is a flight risk.

Accordingly, Defendant's motion to for bond (Doc. 32) is **DENIED** and Defendant **SHALL** remain detained pending resolution of this criminal case.

**IT IS SO ORDERED.**

Date: 10/20/2023

*Timothy S. Black*
Timothy S. Black
United States District Judge